**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NICOLAS PERNAS,

Plaintiff,

-against-

KALSHIEX LLC; KALSHI INC.; KALSHI KLEAR LLC; ROTHERA EXCHANGE AND CLEARING LLC f/k/a LEDGERX LLC; LEDGERX LLC, to the extent it remains a separate or relevant legal entity; and JOHN/JANE DOE ENTITIES 1-10,

Defendants.

Case No. 1:26-cv-7419

# VERIFIED COMPLAINT

Plaintiff, Nicolas Pernas ("Plaintiff") by and through undersigned counsel, alleges as follows upon personal knowledge as to Plaintiff's own acts and experiences, and upon information and belief as to all other matters:

## NATURE OF THE ACTION

1. This action concerns two related but distinct forms of misconduct by KalshiEX LLC ("KalshiEX"), Kalshi Inc. ("Kalshi Inc."), Kalshi Klear LLC ("Kalshi Klear," and together with KalshiEX and Kalshi Inc., "Kalshi"), Rothera Exchange and Clearing LLC f/k/a LedgerX LLC ("Rothera"), and the Doe Defendants (collectively with Kalshi and Rothera, "Defendants").

2. First, Defendants failed to honor a Kalshi event contract. Although the criteria for affirmative resolution were satisfied, Defendants refused to resolve the Event Contract (as defined below) in Plaintiff's favor, applied post hoc requirements not stated in the published terms, and relied on inconsistent standards that Defendants did not apply to materially similar contracts or

evidence, canceled Plaintiff's resting orders without notice or explanation, preemptively changed the Event Contract's displayed expiration time, and prematurely and erroneously resolved the Event Contract in the negative before the stated expiration time..

3. Second, after Plaintiff notified Kalshi before expiration that the Event Contract's (as defined below) resolution criteria had already been satisfied multiple times and sought to preserve or pursue his rights, Defendants restricted Plaintiff's ability to withdraw approximately $25,000 in liquid cash from his account. That withdrawal restriction remains distinct for purposes of emergency relief: Plaintiff does not seek an emergency merits determination requiring Defendants to pay the disputed Event Contract proceeds before adjudication. Plaintiff seeks narrow emergency relief restoring his ability to withdraw liquid cash that Defendants have no lawful basis to restrain, while his claims for the unpaid Event Contract payout, premature negative resolution, canceled resting orders, and related damages are adjudicated in this action.

4. Plaintiff does not seek emergency relief requiring Defendants to pay the disputed Event Contract proceeds and other related damages before adjudication of the merits. Rather Plaintiff seeks narrow emergency relief requiring Defendants to restore Plaintiff's ability to withdraw liquid cash balances that Defendants have no lawful basis to freeze, while Plaintiff's claims for unpaid contract proceeds, premature negative resolution, canceled resting orders, and related damages are adjudicated in this action.

5. Defendants operate, own, control, clear, administer, or support a federally regulated designated contract market ("DCM") for event contracts and related clearing infrastructure. A regulated marketplace cannot refuse to honor its own published contract terms and then, when a participant alerts them of this, retaliate by freezing the participant's ability to withdraw his own liquid funds.

## PARTIES

6. Plaintiff is a natural person and a Kalshi participant. Plaintiff is a citizen and resident of Illinois.

7. Defendant KalshiEX LLC is, upon information and belief, a Delaware limited liability company and a DCM registered with the Commodity Futures Trading Commission (the "CFTC"). KalshiEX LLC operates or is responsible for the exchange on which the event contracts at issue were listed and traded.

8. Defendant Kalshi Inc. is, upon information and belief, a Delaware corporation that owns, controls, manages, markets, or provides the consumer-facing Kalshi platform, account interface, customer relationship, and/or related services through which Plaintiff opened and accessed his account.

9. Defendant Kalshi Klear LLC is, upon information and belief, a CFTC-registered derivatives clearing organization and an affiliate of KalshiEX LLC and/or Kalshi Inc. To the extent Kalshi Klear LLC cleared, held, controlled, transferred, restricted, or had authority over Plaintiff's cash balances or contracts, it is a proper Defendant.

10. Defendant Rothera Exchange and Clearing LLC f/k/a LedgerX LLC, f/k/a FTX US Derivatives, f/k/a MIAX Derivatives Exchange is, upon information and belief, a CFTC-registered derivatives clearing organization and/or designated contract market that formerly cleared contracts traded on Kalshi. To the extent Rothera, formerly known as LedgerX LLC, cleared, held, controlled, transferred, restricted, or had authority over Plaintiff's funds or contracts at any relevant time in relation to the dispute described herein, it is a proper Defendant.

11. Defendant LedgerX LLC is named to the extent it remains a separate legal entity, was the relevant clearing entity during any portion of the events at issue, or is otherwise necessary

to afford complete relief. If discovery confirms that LedgerX LLC has been renamed Rothera Exchange and Clearing LLC and is not separately suable, Plaintiff will conform the pleadings accordingly.

12. Defendants John/Jane Doe Entities 1-10 are presently unidentified entities that owned, operated, cleared, administered, controlled, restricted, or had custody of Plaintiff's Kalshi account, funds, contracts, data, or withdrawal access. Plaintiff will amend this Complaint when their identities are learned.

**JURISDICTION AND VENUE**

13. This Court has subject-matter jurisdiction under 28 U.S.C. section 1331 because Plaintiff asserts claims arising under the Commodity Exchange Act, including 7 U.S.C. section 25.

14. This Court has supplemental jurisdiction under 28 U.S.C. section 1367 over Plaintiff's related state-law claims because they arise from the same case or controversy.

15. This Court also has diversity jurisdiction under 28 U.S.C. section 1332 if Plaintiff and all properly joined Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff will amend or supplement these jurisdictional allegations as necessary after confirming each Defendant's citizenship.

16. Venue is proper in this District under 28 U.S.C. section 1391 because Defendants transact business in this District, relevant conduct occurred in or was directed from this District, Defendants maintain operations or regulatory contacts here, and/or the Rulebook and account relationship concern a platform headquartered, operated, or substantially administered in New York.

17. Personal jurisdiction exists because Defendants purposefully availed themselves of this forum by operating, administering, clearing, marketing, and providing access to a New York-

based or New York-directed regulated exchange and customer account platform, and because Plaintiff's claims arise from those contacts.

**FACTUAL ALLEGATIONS**

18. On or around November 6, 2022, Plaintiff opened and maintained an account on the Kalshi platform and became bound by the applicable account documents, Rulebook, market terms, and event-contract resolution criteria.

19. Starting on or around January 4, 2025, Kalshi opened an event contract titled Who will Trump Meet with in 2025, with the ticker KXWLEADER-25-JT (the "Event Contract").

20. From January 18, 2025 through January 1, 2026, Plaintiff purchased positions in the Event Contract.

21. The published resolution criteria for the contract provided that it "[r]esolves Yes if the President of the United States meets Justin Trudeau in 2025." *Who Will Trump Meet with in 2025?*, Kalshi (Market KXWLEADER-25-JT), https://kalshi.com/markets/kxwleader/world-leaders-president-meets/kxwleader-25 (last visited July 1, 2026). The Event Contract further states "[a] meeting will be included if the President and Justin Trudeau shake hands or speak to each other directly." *Id.*

22. Under the plain language of the published terms, the event occurred because the President met with Trudeau during the applicable time frame of the Event Contract.

23. One of several independently sufficient qualifying events occurred on February 3, 2025, when President Trump publicly confirmed that he had spoken directly with Prime Minister Trudeau, including about specific issues (e.g., Canadian banking regulation). *See* President Trump Signs Executive Orders in the Oval Office, Feb. 3, 2025, The White House (Feb. 3, 2025), https://www.whitehouse.gov/videos/president-trump-signs-executive-orders-in-the-oval-office-

feb-3-2025/; *see also* WLEADER Contract Terms, KalshiEX LLC, at 1, https://kalshi-public-docs.s3.amazonaws.com/contract_terms/WLEADER.pdf. Following public reports of the meeting the YES price increased substantially. Accordingly, after trading had already commenced and the YES price had increased substantially as described above, Kalshi posted guidance or rule-summary language stating that phone calls would not count toward affirmative resolution of the Event Contract. That language was not included in the Event Contract's published terms, was not adopted through a formal amendment to the Event Contract, and conflicted with the published criteria providing that a meeting would be included if the President and Justin Trudeau "shake hands or speak to each other directly." *See* WLEADER Contract Terms, KalshiEX LLC, at 1, https://kalshi-public-docs.s3.amazonaws.com/contract_terms/WLEADER.pdf. The February 3 guidance did not alter the Event Contract's published terms or negate the other qualifying events that required affirmative resolution. Rather, it is one example of Defendants' broader use of post hoc limitations not stated in the Event Contract to avoid resolving the Event Contract affirmatively. Kalshi's use of post hoc guidance or rule-summary language not incorporated into the Event Contract was inconsistent with its represented role as a neutral exchange and with participants' reasonable expectation that the Event Contract would be administered according to its published terms. See *How Does Kalshi Make Money?*, Kalshi Help Center, https://help.kalshi.com/en/articles/13823767-how-does-kalshi-make-money (last visited Aug. 3, 2026). That post-hoc guidance did not amend the Event Contract's published terms and did not negate the other qualifying events that independently required affirmative resolution.

24. Nevertheless, as the Event Contract remained open approaching its stated expiration, Plaintiff continued trading and maintained resting orders in the Event Contract. On or around December 28, 2025, Defendants canceled Plaintiff's resting orders without notice or

explanation, causing Plaintiff to lose priority on additional contracts that were later executed against other traders' orders. Plaintiff restored his resting orders after discovering the cancellation.

25. On or about December 28, 2025, at approximately 2:00 a.m. ET, Defendants canceled Plaintiff's resting orders in the Event Contract without notice or explanation. To be clear Plaintiff did not cancel those orders, and the Event Contract had not expired. As a result, Plaintiff lost order priority with respect to approximately 20,000 contracts that, based on trading data exported from Kalshi, would have filled against Plaintiff's resting orders had those orders remained on the order book. Plaintiff restored his resting orders several hours later after discovering the cancellation. Kalshi has identified no Rulebook provision authorizing the cancellation and provided no written notice explaining the basis for canceling Plaintiff's resting orders.

26. As the expiration of the Event Contract approached and Kalshi had yet to resolve it affirmatively, despite the occurrence of multiple qualifying events, Plaintiff wrote a letter dated December 29, 2025 to Kalshi advising them that the Event Contract's payout criterion had been met multiple times months ago and required an affirmative resolution (the "Resolution Demand Letter").

27. On December 31, 2025, before the Event Contract's stated 10:00 a.m. ET expiration, Plaintiff maintained substantial resting buy orders at $0.01 per contract and intended to continue acquiring additional positions before expiration. Upon information and belief, Plaintiff had sufficient resting orders and available cash to acquire additional positions had the Event Contract remained open until its stated expiration time. Kalshi's premature negative resolution cut off Plaintiff's ability to complete those additional purchases.

28. On or about January 1, 2026, Kalshi changed the Event Contract's displayed expiration time from 10:00 a.m. ET to 12:00 a.m. ET, even though the Event Contract's published terms stated a 10:00 a.m. ET expiration and Kalshi's own transaction records reflect that Plaintiff's resting orders continued executing at approximately 2:11 a.m. ET. Kalshi then prematurely and erroneously resolved the Event Contract in the negative, cutting off Plaintiff's ability to continue trading before the stated expiration time.

29. Plaintiff held 1,173,968 positions that should have paid $1,173,968 if resolved in accordance with the published contract terms.[1]

30. On January 1, 2026, Defendants nevertheless erroneously resolved the Event Contract in contravention of its terms and against Plaintiff, refused to credit the payout owed to Plaintiff, or otherwise failed to honor the Event Contract.

31. Defendants' refusal was inconsistent with the published Event Contract language, the reasonable expectations created by that language, and Defendants' obligation to administer listed event contracts according to their stated terms.

32. Because Kalshi had not resolved the Event Contract affirmatively before its stated expiration date of January 1, 2026 at 10:00 a.m. ET, Plaintiff maintained open resting orders in the Event Contract and planned to acquire additional positions before expiration. Plaintiff had placed open orders before January 1, 2026, including orders he had to replace after Kalshi canceled his prior resting orders in late December without notice or explanation.

[1] Kalshi event contracts trade as binary "Yes" or "No" positions. A trader purchases a position from another market participant at a market price between $0.00 and $1.00, with the Yes and No sides together contributing $1.00. When the market resolves, the side that correctly corresponds to the outcome receives $1.00 per contract, while the other side receives $0.00. Thus, unlike a traditional security whose value may fluctuate indefinitely, the settlement value of each Event Contract position was fixed at $1.00 upon affirmative resolution. See Prices and Trades, Kalshi News (Dec. 1, 2022), https://news.kalshi.com/p/prices-and-trades; What Are Prediction Markets?, Kalshi Help Center (Mar. 19, 2026), https://help.kalshi.com/en/articles/13823766-what-are-prediction-markets.]

33. The Event Contract's published terms stated that the expiration time was 10:00 a.m. ET. The market listing for the Trudeau strike displayed an expiration date of January 1, 2026. Together, those published materials reflected a January 1, 2026, expiration at 10:00 a.m. ET. Kalshi later altered the displayed expiration time to 12:00 a.m. ET, even though Plaintiff's trading records reflect that his resting orders continued to execute after midnight, including at approximately 2:11 a.m. ET.

34. Kalshi thereafter prematurely and erroneously resolved the Event Contract in the negative before the stated 10:00 a.m. ET expiration, cutting off Plaintiff's ability to continue trading and acquire additional positions.

35. The Event Contract's early-expiration provision applied where "an event described in the Payout Criterion occurs," in which case "expiration will be moved to an earlier date and time in accordance with Rule 7.2." *Id*. It did not authorize Kalshi to accelerate expiration and resolve the Event Contract in the negative before the stated expiration time. However, Kalshi did exactly that: it preemptively reset the Event Contract's expiration time from 10:00 a.m. ET to midnight and prematurely resolved the Event Contract in the negative, in contravention of the Event Contract's published criteria. Nor did Kalshi identify, invoke, or announce any Rulebook basis authorizing it to move the displayed expiration time to midnight for that purpose. However, that is exactly what Kalshi did: it preemptively reset the Event Contract's expiration time from 10:00 a.m. ET to midnight and prematurely resolved the Event Contract in the negative, in contravention of the Event Contract's published criteria.

36. At the time Kalshi prematurely closed the Event Contract, Plaintiff had approximately $24,293.10 in available cash in his account that he intended to deploy before the stated 10:00 a.m. ET expiration.

37. Immediately before Kalshi prematurely closed the Event Contract, approximately 47,000 of Plaintiff's resting orders executed at $0.01 per contract. Plaintiff's resting orders also executed approximately 111,000 additional contracts at $0.01 per contract only hours earlier. Those executions reflected material trading volume at the $0.01 price level. At the time of the premature closure, Plaintiff had approximately $24,293.10 in available cash that he intended to deploy before the stated expiration time. At $0.01 per contract, those funds were sufficient to purchase up to 2,429,310 additional contracts. Upon affirmative resolution, those additional contracts would have carried a gross settlement value of up to $2,429,310.00.

38. After subtracting the $24,293.10 cost basis, Plaintiff's damages from Kalshi's premature closure of the Event Contract are approximately $2,405,016.90.

39. On or about January 1, 2026, after Kalshi erroneously resolved the Event Contract in the negative and cut off Plaintiff's ability to continue trading before the stated expiration time, Plaintiff attempted to withdraw liquid cash that remained available in his Kalshi account. Plaintiff then discovered that Defendants had restricted his withdrawal access. The restricted funds totaled approximately $24,293.10.

40. On January 9, 2026, Plaintiff sent Kalshi a follow-up letter, reiterating that Defendants had failed to honor the Event Contract's published criteria (the "Follow-Up Resolution Demand Letter").

41. In the Follow-Up Resolution Demand Letter, Plaintiff also advised Kalshi that, after the Event Contract was resolved erroneously, he attempted to withdraw a portion of the liquid cash in his account but received an error. Plaintiff further advised Kalshi that the restriction appeared to be individualized and rather than the result of a systemic issue.

42. The timing and sequence of Defendants' conduct support an inference that Defendants restricted Plaintiff's withdrawal access after he notified Kalshi that the Event Contract's resolution criteria had been satisfied, demanded affirmative resolution, and sought to preserve or pursue his rights. Now, over seven months later, Defendants have continued to prevent Plaintiff from withdrawing liquid funds from his account without providing a valid contractual, regulatory, or legal basis for doing so. As a result of the withdrawal restriction, Plaintiff cannot withdraw approximately $24,293.10 of Plaintiff's liquid cash that remains frozen within his Kalshi account.

43. Plaintiff's liquid cash balance, reflected in transaction data exported from Kalshi, is distinct from Plaintiff's disputed $1,173,968.00 payout claim for positions he actually held in the Event Contract. Before Kalshi prematurely closed and incorrectly resolved the Event Contract, Plaintiff alleges that he would have used those funds to acquire additional positions before the stated expiration time. Once Kalshi closed the Event Contract, however, those funds were no longer committed to any open position or pending order and were not subject to any known court order, margin deficiency, open-position requirement, regulatory hold, chargeback, fraud allegation, or other lawful restraint. Defendants nevertheless prevented Plaintiff from withdrawing them.

44. Defendants have not provided any explanation whatsoever, contractual basis, regulatory basis, or account-level justification for preventing Plaintiff from accessing and withdrawing his liquid cash.

45. Upon information and belief, the account restriction was imposed because Plaintiff disputed Defendants' refusal to honor the resolution criteria for the Event Contract and pursued or threatened to pursue relief.

46. Defendants' continued restraint of Plaintiff's liquid cash is wrongful regardless of how the underlying Event Contract dispute is ultimately resolved.

**FIRST CAUSE OF ACTION**
**Breach of Contract**

47. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

48. The account documents, Rulebook, market terms, and Event Contract resolution criteria constitute binding contractual obligations between Plaintiff and one or more Defendants.

49. Plaintiff performed by opening an account, funding the account, purchasing contracts, complying with applicable terms, and holding positions governed by the published contract language.

50. Defendants breached by failing to resolve and honor the Event Contract according to its published terms by preemptively resetting the Event Contract's expiration time and prematurely resolving it in the negative in contravention of those terms; and by restricting Plaintiff's access to liquid account funds without a lawful or contractual basis.

51. As a direct and proximate result, Plaintiff suffered damages in an amount to be proven at trial, including the unpaid Event Contract proceeds, damages arising from the premature closure and erroneous negative resolution of the Event Contract, unilateral cancelation of orders, loss of use of liquid funds, consequential damages, interest, and costs.

**SECOND CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**

52. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

53. Every contract governed by New York law contains an implied covenant of good faith and fair dealing.

54. Defendants were required to exercise any discretion regarding market resolution, account administration, withdrawal access, and dispute procedures honestly, in good faith, and consistent with Plaintiff's reasonable contractual expectations, and not to use post hoc rule summary language, or account restrictions to deprive Plaintiff of the benefit of the published contract terms.

55. Defendants breached the implied covenant by resolving the Event Contract contrary to its published terms, issuing or relying on post hoc rule summary language not formally incorporated into the Event Contract which purported to exclude phone calls over one month after trading had already commenced; using account restrictions as leverage after Plaintiff disputed the result, and administering any purported dispute process in a manner that deprived Plaintiff of the benefit of the bargain.

56. Plaintiff suffered damages as a direct and proximate result.

**THIRD CAUSE OF ACTION**
**Declaratory Judgment**

57. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.An actual controversy exists concerning whether Defendants have any lawful or contractual basis to prevent Plaintiff from withdrawing liquid funds available in his account after the Event Contract was closed and those funds were no longer committed to any open position or pending order. Plaintiff is entitled to a declaration that Defendants lack a lawful or contractual basis to prevent Plaintiff from withdrawing liquid funds available in his account, except to the extent any such funds are subject to a valid court order, regulatory hold, open-position requirement, margin deficiency, chargeback, fraud allegation, or other lawful restraint. Plaintiff is entitled to a declaration that Defendants lack a lawful basis to prevent Plaintiff from accessing and withdrawing

liquid cash balances unrelated to any disputed payout, open position, court order, or regulatory hold.

**FOURTH CAUSE OF ACTION**
**Conversion**

58. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

59. Plaintiff has an immediate possessory right to his liquid cash balance held in or through his Kalshi account.

60. Defendants exercised unauthorized dominion and control over Plaintiff's liquid cash by locking the account to the extent preventing withdrawal of funds that are not subject to a valid restraint.

61. Plaintiff demanded or attempted to obtain access to his funds for over seven months, and Defendants refused or failed to provide such access.

62. Plaintiff suffered damages, including loss of use of funds, interest, and consequential harm.

**FIFTH CAUSE OF ACTION**
**Money Had and Received / Unjust Enrichment, Pleaded in the Alternative**

63. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

64. Defendants hold funds, credits, or benefits belonging to Plaintiff, including liquid account cash and unpaid contract proceeds.

65. Equity and good conscience require Defendants to return those funds and benefits to Plaintiff.

66. This claim is pleaded in the alternative to Plaintiff's contract claims to the extent any Defendant denies privity or contends that no enforceable contract governs the funds or proceeds at issue.

**SIXTH CAUSE OF ACTION**
**Commodity Exchange Act, 7 U.S.C. section 25**

67. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

68. Upon information and belief, one or more Defendants are registered entities within the meaning of the Commodity Exchange Act.

69. Plaintiff engaged in transactions on or subject to the rules of one or more registered entities.

70. Defendants were required to enforce and apply applicable bylaws, rules, regulations, resolutions, market terms, and contract resolution criteria in good faith and consistent with the Commodity Exchange Act and CFTC regulations, including rules governing contract modification, expiration and resolution, order handling, withdrawal access, account restrictions, and publication of trading and settlement information.

71. Defendants, acting in bad faith, failed to enforce or properly apply applicable rules, market terms, and Event Contract specifications, and administered those rules and terms in a manner inconsistent with their obligations under the Commodity Exchange Act, CFTC regulations, and applicable registered-entity rules, including by applying post hoc guidance or rule-summary language not incorporated into the Event Contract, prematurely resolving the Event Contract in the negative in contravention of its published criteria, canceling Plaintiff's resting orders without identifying Rulebook authority, and restricting Plaintiff's withdrawal access without identifying any permissible Rulebook or legal basis.

72. Defendants' bad-faith failure or action caused Plaintiff actual losses, including the unpaid Event Contract proceeds, damages arising from the premature closure and erroneous negative resolution of the Event Contract, damages arising from canceled resting orders that would have filled, loss of access to liquid cash, and other damages to be proven at trial.

73. Plaintiff seeks actual damages and all other relief available under 7 U.S.C. section 25 and related law.

**SEVENTH CAUSE OF ACTION**
**Negligent Misrepresentation**

74. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

75. Defendants, through Kalshi's website, application, market listing, market rules, event contract terms, and related public-facing materials, represented to Plaintiff and other market participants that the subject Event Contract would be resolved according to the published contract language and objective resolution criteria made available to participants before and during trading.

76. Defendants possessed unique and specialized knowledge concerning the listing, administration, interpretation, and resolution of event contracts on the Kalshi exchange, including the criteria by which the subject Event Contract would be resolved. Defendants also had exclusive control over the market listing, the published contract terms, the resolution process, the account platform, and the information available to participants regarding how the contract would be administered.

77. Because Defendants operated a regulated exchange and invited participants to rely on Defendants' published contract terms and resolution criteria when purchasing Event Contract positions, Defendants owed Plaintiff a duty to provide accurate and non-misleading information concerning the terms and resolution of the subject contract.

78. Defendants' representations were false or misleading because Defendants did not resolve the subject Event Contract in accordance with the published terms and criteria upon which Plaintiff reasonably relied.

79. Plaintiff reasonably relied on Defendants' representations in purchasing and maintaining his position in the subject Event Contract.

80. As a direct and proximate result of Defendants' negligent misrepresentations, Plaintiff suffered damages in an amount to be determined at trial, including but not limited to the value of the contract payout that Defendants refused to honor, loss of use of funds, and other consequential damages.

## EIGHTH CAUSE OF ACTION
## Fraud / Fraudulent Misrepresentation and Concealment

81. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

82. Defendants represented to Plaintiff and other market participants that the Event Contract would be resolved according to the published contract language and objective resolution criteria displayed on Kalshi's market page and related materials.

83. Specifically, Defendants represented, including through the market title, contract terms, market rules, and resolution criteria, that participants purchasing the relevant position would be entitled to payment if "the President of the United States meets Justin Trudeau in 2025." The Event Contract further stated that "[a] meeting will be included if the President and Justin Trudeau shake hands or speak to each other directly."

84. Those representations were made on or about January 4, 2025, through Kalshi's website, application, and public market materials, including the market identified as "Who will Trump Meet with in 2025," with the ticker KXWLEADER-25-JT.

85. Defendants published those representations for the purpose of inducing participants, including Plaintiff, to purchase, sell, maintain, or otherwise trade positions in the Event Contract in reliance on the published terms.

86. Plaintiff purchased and maintained positions in the Event Contract after reviewing and relying upon Defendants' published contract terms and resolution criteria.

87. Upon information and belief, Defendants knew, or recklessly disregarded, that the published terms and criteria were false, misleading, or incomplete because Defendants either: (a) intended to apply different, undisclosed, or post hoc criteria not stated in the Event Contract's published terms, including the February 3, 2025 guidance or rule-summary language purporting to exclude phone calls after trading had already commenced; (b) reserved to themselves discretion to disregard the plain meaning of the published criteria; or (c) later adopted and enforced a resolution position inconsistent with the published criteria for reasons unrelated to the objective occurrence of qualifying events.

88. The timing of the February 3, 2025 guidance or rule-summary language further supports an inference of scienter and materiality because it was issued after trading had commenced and on the same date as one of the qualifying events alleged by Plaintiff. Following that guidance, the YES price allegedly fell from approximately $0.88 to approximately $0.13 over the next two days.

89. Upon information and belief, Defendants also concealed from Plaintiff and other market participants material facts concerning how Defendants would apply the Event Contract, including any internal limitation, post hoc criterion, or resolution methodology inconsistent with the published terms available to participants before and during trading.

90. Defendants made and/or concealed these material facts with the intent that Plaintiff and other participants rely on the published terms and continue trading or holding positions in the Event Contract.

91. Plaintiff reasonably and justifiably relied on Defendants' published representations in purchasing and maintaining his positions in the Event Contract.

92. Had Plaintiff known that Defendants would not honor the Event Contract according to the published terms and objective criteria, Plaintiff would not have purchased or maintained his positions, or would have taken different action to protect his interests.

93. As a direct and proximate result of Defendants' fraudulent misrepresentations and concealment, Plaintiff suffered damages in an amount to be determined at trial, including the unpaid Event Contract payout, damages arising from the premature negative resolution, loss of use of funds, and other damages. Defendants' conduct was willful, wanton, reckless, and undertaken in conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages to the extent permitted by law.

## NINTH CAUSE OF ACTION
## Violation of New York General Business Law § 349

94. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

95. Defendants engaged in consumer-oriented conduct by offering standardized event contracts to the public through Kalshi's website and application and by inviting retail participants, including Plaintiff, to purchase positions based on published market terms, contract language, and resolution criteria.

96. Defendants' conduct was materially misleading because Defendants represented that the Event Contract would be resolved according to the published terms and objective criteria available to participants, but then failed to honor the contract after the event occurred under the published criteria, including by relying on guidance or rule summary language that was not part of the Event Contract's published terms.

97. Defendants' conduct was also materially misleading because market participants were not informed, before or during trading, that Defendants would apply an undisclosed, inconsistent, or post hoc criteria not stated in the Event Contract's published terms, including the February 3, 2025 guidance or rule summary language purporting to exclude phone calls after trading had already commenced, undisclosed, to deny payment despite the occurrence of the event.

98. The misleading conduct was not limited to a private contractual dispute between sophisticated commercial parties. Defendants' representations were made through public-facing, standardized market materials directed to participants generally, including retail users of Kalshi's exchange platform.

99. Plaintiff was injured as a result of Defendants' deceptive acts and practices, including by purchasing and maintaining a position in the subject Event Contract in reliance on misleading market terms by being deprived of the opportunity to trade through the stated expiration time after Defendants prematurely resolved the Event Contract in the negative, and by being denied the payout to which he was entitled.

100. Plaintiff therefore seeks actual damages, statutory damages, treble damages to the extent permitted by law, injunctive relief, attorneys' fees, costs, and such other relief as the Court deems just and proper.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, and grant the following relief:

a. Awarding Plaintiff compensatory, actual, consequential, statutory, punitive, and enhanced damages, including treble damages under New York General Business Law § 349 to the extent permitted by law, in an amount to be proven at trial;

b. Declaring that the Event Contract should have resolved in Plaintiff's favor under its published terms;

c. Declaring that Defendants have no lawful basis to prevent Plaintiff from withdrawing liquid funds available in his account, except to the extent any such funds are subject to a valid regulatory hold, open-position requirement, court order, or other lawful restraint;

e. Temporarily, preliminarily, and permanently enjoining Defendants from preventing Plaintiff's withdrawal of liquid funds available in his account, except to the extent any such funds are subject to a valid regulatory hold, open-position requirement, court order, or other lawful restraint;

f. Awarding Plaintiff pre-judgment and post-judgment interest;

g. Awarding Plaintiff his costs, disbursements, and reasonable attorneys' fees to the fullest extent permitted by contract, statute, rule, or other applicable law; and

h. Granting such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

[SIGNATURE ON NEXT PAGE]

Dated: August 28, 2026
New York, New York

Respectfully submitted,
MARCELLA MAXINE JAYNE, ESQ. PLLC

By: ______________________________

Marcella Maxine Jayne, Esq.
43 West 43rd St, Suite 381
New York, NY 10036
Tel: (212) 470-0525
Email: mjayne@jayne-law.com

## VERIFICATION

I, NICOLAS PERNAS, declare under penalty of perjury pursuant to 28 U.S.C. section 1746 that I am the Plaintiff in this action; that I have read the foregoing Verified Complaint; and that the factual allegations concerning my own acts, account, transactions, communications, and damages are true and correct to the best of my knowledge, information, and belief.

Executed on August 28, 2026.

*Nicolas Pernas*
NICOLAS PERNAS