**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NICOLAS PERNAS,

*Plaintiff,*

v.

KALSHIEX LLC; KALSHI INC.; KALSHI KLEAR LLC; ROTHERA EXCHANGE AND CLEARING LLC f/k/a LEDGERX LLC, to the extent it remains a separate or relevant legal entity; and JOHN/JANE DOE ENTITIES 1-10,

*Defendants.*

Case No. 1:26-CV-07419

**ORAL ARGUMENT REQUESTED**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1
BACKGROUND ........................................................................................................ 2
A. Kalshi Operates a Federally Regulated Exchange for Event Contracts .................. 2
B. Plaintiff Agreed to the Member Agreement and Rulebook Before Trading ........... 3
C. The Event Contract and Kalshi's February 3, 2025 Guidance ................................ 5
D. The Order Cancellation, Resolution, and Withdrawal Allegations ......................... 5
E. The Complaint ........................................................................................................ 6
F. Plaintiff Refuses Kalshi's Request to Arbitrate ....................................................... 7
ARGUMENT ............................................................................................................ 7
I. Plaintiff must be compelled to arbitrate his claims and this action should be stayed ............ 7
A. Plaintiff Agreed to Arbitrate His Claims Against Kalshi ........................................ 8
B. Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement ................. 9
C. The Court Should Compel Arbitration and Stay This Action ................................ 10
II. In the alternative, The complaint Fails to state a cause of action and must be dismissed .... 10
A. The Breach of Contract Claim Must Be Dismissed ............................................... 10
1. Plaintiff Identifies No Contractual Provision That Kalshi Breached ........ 11
2. Kalshi's Resolution of the Event Contract Was an Exercise of Its Express Contractual Discretion ........................................................ 11
3. The Order Cancellation, Expiration, and Withdrawal Allegations Do Not State a Breach ........................................................ 12
4. The Damages Plaintiff Seeks Are Barred by the Parties' Agreements ..... 13
B. The Implied Covenant Claim (Count Two) Must Be Dismissed as Duplicative .. 13
C. The Declaratory Judgment Claim (Count Three) Must Be Dismissed ................. 14
D. The Conversion Claim (Count Four) Must Be Dismissed .................................. 14
1. Plaintiff Alleges No Possessory Interest In, or Dominion Over, Specific Funds ........................................................ 15
2. The Conversion Claim Merely Seeks to Enforce a Contractual Obligation ........................................................ 15
E. The Unjust Enrichment and Money Had and Received Claim (Count Five) Must Be Dismissed ........................................................ 16
1. The Contracts Governing This Dispute Preclude Quasi-Contract Recovery ........................................................ 16

2. Plaintiff Fails to Allege That Any Defendant Was Enriched at His Expense ..... 17

F. The Commodity Exchange Act Claim (Count Six) Fails As A Matter of Law ..... 17

1. Count Six Must Be Dismissed as to Every Defendant Not Alleged to Be a Registered Entity ..... 18

2. The Complaint Does Not Plausibly Allege Bad Faith ..... 18

3. The Complaint Does Not Identify Any Rule KalshiEX Failed to Enforce or Any CEA Provision It Violated ..... 19

4. Plaintiff Cannot Recover Lost-Opportunity Damages Under Section 25(b) ..... 20

G. The Negligent Misrepresentation and Fraud Claims (Counts Seven and Eight) Must Be Dismissed ..... 20

1. Both Claims Impermissibly Duplicate the Breach of Contract Claim ..... 20

2. Plaintiff Fails to Allege a Special Relationship Supporting Negligent Misrepresentation ..... 21

3. The Fraud Claim Does Not Satisfy Rule 9(b) and Is Contradicted by the Complaint Itself ..... 21

H. The General Business Law Section 349 Claim (Count Nine) Fails as a Matter of Law ..... 22

1. Plaintiff's Claim Under New York's General Business Law Is Preempted ..... 22

2. Plaintiff's General Business Law Section 349 Claim Also Fails Substantively ..... 25

3. Plaintiff, an Illinois Resident, Does Not Allege a Deceptive Transaction in New York ..... 25

4. The Claim Arises from a Private Contract Dispute, Not Consumer-Oriented Conduct ..... 26

5. The Complaint Does Not Plead a Materially Misleading Act or Omission ..... 26

6. Plaintiff Fails to Plead a Cognizable Injury Caused by Any Deception ..... 27

7. Alternatively, Count Nine Is Limited by Plaintiff's Contractual Undertakings ..... 27

CONCLUSION ..... 27

**TABLE OF AUTHORITIES**

**Cases**

*Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26 (S.D.N.Y. 2021) ...........16

*Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995) ........................................................7

*Am. Agric. Movement, Inc. v. Bd. of Trade*, 977 F.2d 1147 (7th Cir. 1992).................................24

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013).......................................................7

*Arizona v. United States*, 567 U.S. 387 (2012).................................................................................24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................12, 18, 26

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ............................................................7

*Atuahene v. City of Hartford*, 10 Fed. App'x 33 (2d Cir. 2001)....................................................18

*Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402 (S.D.N.Y. 2016) .........................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................................................18

*Birner v. Kensington Vanguard Holdings, LLC*, No. 24-CV-2743-LTS-JW, 2025 WL 963311 (S.D.N.Y. Mar. 31, 2025) ..........................................................................................16

*Brawer v. Options Clearing Corp.*, 807 F.2d 297 (2d Cir. 1986)...........................................17, 19

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004)..............................17

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13 (2d Cir. 1996)...............20

*Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462 (S.D.N.Y. 2006) ........................14

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).......................................................3

*In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir. 1993) .....................................................................15

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382 (1987) ................................16, 20

*Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43 (2006) ...............................................14

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16 (2d Cir. 1995)..................................9

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777 (2012) ...................................................................16

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ............................................3

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) .......................................................22

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013)........14

*Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384 (1995)........14

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627 (S.D.N.Y. 2011)........15

*Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553 (2009)........21

*Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825 (S.D.N.Y. 2020)........8

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982)........23

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995)........8

*Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793 (2d Cir. 2011)........10

*Flores v. Chime Fin., Inc.*, No. 21-cv-4735, 2022 WL 873252 (S.D.N.Y. Mar. 23, 2022)........8

*Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-civ-3956, 2014 WL 837050 (S.D.N.Y. Mar. 3, 2014)........16

*Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987)........9

*Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561 (2005)........17

*Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314 (2002)........25

*Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73 (2d Cir. 2002)........13

*Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104 (2d Cir. 2018)........19

*KalshiEX LLC v. Flaherty*, 172 F.4th 220 (3d Cir. 2026)........24

*Kaye v. Grossman*, 202 F.3d 611 (2d Cir. 2000)........17

*Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255 (2d Cir. 2006)........20

*Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940 (2012)........25

*Komlossy v. Faruqi & Faruqi, LLP*, No. 15-civ-9316 (KPF), 2017 WL 722033 (S.D.N.Y. Feb. 23, 2017), *aff'd*, 714 Fed. App'x 11 (2d Cir. 2017)........15

*Kumaran v. Nat'l Futures Ass'n*, No. 20-cv-3668-GHW, 2022 WL 1805936 (S.D.N.Y. June 2, 2022)........20

*Leist v. Simplot*, 638 F.2d 283 (2d Cir. 1980), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982)........23

*Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2d Cir. 2006)........21

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) ....................................................21

*Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430 (1994) ....................................13

*Meyer v. Uber Techs., Inc.*, 868 F.3d 66 (2d Cir. 2017) ..............................................................8

*Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113 (1st Dep't 1990) ..................................15

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ....................................................22

*Minpeco, S.A. v. Hunt*, 693 F. Supp. 58 (S.D.N.Y. 1988) ..........................................................18

*Mississippi v. Louisiana*, 506 U.S. 73 (1992) ...............................................................................23

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)............................7, 10

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013)....................15

*Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs., Inc.*,
183 F.4th 78 (2d Cir. 2026) ........................................................................................... 16-17

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*,
85 N.Y.2d 20 (1995) ................................................................................................... 25-26

*In re Part 60 Put-Back Litig.*, 36 N.Y.3d 342 (2020) ..................................................................13

*Rynasko v. N.Y. Univ.*, 63 F.4th 186 (2d Cir. 2023) ..................................................................17

*Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43 (1999) ..................................................................27

*Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39 (1997)....................................................7

*Smith v. Spizzirri*, 601 U.S. 472 (2024) ......................................................................................10

*W. Cap. Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438 (S.D.N.Y. 2001),
*aff'd*, 25 Fed. App'x 63 (2d Cir. 2002)......................................................................................18

*Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597 (1991) ..................................................................22

*WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997) .........................................................9

**Statutes**

7 U.S.C. § 2..................................................................................................................................23

7 U.S.C. § 7..................................................................................................................................24

7 U.S.C. § 16................................................................................................................................23

7 U.S.C. § 25 ........................................ *passim*

9 U.S.C. § 2 ........................................ 7

9 U.S.C. § 4 ........................................ 7, 10

N.Y. Gen. Bus. Law § 349 ........................................ *Passim*

Defendants KalshiEX LLC ("KalshiEX"), Kalshi Inc., and Kalshi Klear LLC ("Kalshi Klear," and collectively, "Kalshi" or the "Kalshi Defendants") respectfully submit this Memorandum of Law in support of their Motion to Compel Arbitration, or in the Alternative, Motion to Dismiss Plaintiff Nicolas Pernas's Verified Complaint (ECF No. 1, the "Complaint" or "Compl.") pursuant to Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3–4, or, in the alternative, Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

This case is a disappointed trader's attempt to convert a losing position in a single event contract into a nine-count federal lawsuit. Plaintiff bought "Yes" positions in a Kalshi event contract asking whether President Trump would meet Canadian Prime Minister Justin Trudeau in 2025. Compl. ¶¶ 19–21. On February 3, 2025, the same day the President announced that he had spoken with Mr. Trudeau by telephone, Kalshi publicly posted guidance that phone calls would not count toward affirmative resolution. *Id.* ¶ 23. The Complaint alleges that the "Yes" price immediately fell from approximately $0.88 to approximately $0.13. *Id.* ¶ 88. Plaintiff, fully aware of Kalshi's announced interpretation, kept buying positions in the same event contract for nearly eleven more months, largely at $0.01 per contract, until he held 1,173,968 "Yes" positions. *Id.* ¶¶ 20, 24, 29, 37. When the contract resolved "No" on January 1, 2026, consistent with the interpretation Kalshi had announced a year earlier, Plaintiff sued, demanding more than $3.5 million. *Id.* ¶¶ 29, 38.

This dispute does not belong in this Court. As a condition of opening his Kalshi account, Plaintiff agreed to the Member Agreement, which provides that he "will abide by and be subject to the Kalshi Rulebook . . . including the obligation to submit to arbitration," and that "[a]ny dispute between Kalshi and You arising from or in connection with this Member Agreement will be settled in accordance with the procedures set forth in the Kalshi Rulebook." Declaration of

Xavier Sottile ("Sottile Decl.") Ex. 1 (the "Member Agreement") §§ V, XVII. The Rulebook, in turn, provides that "any action [a Member] brings against a Kalshi Party . . . will be resolved by binding arbitration." *Id.* Ex. 2 (the "Rulebook" or "RB") R. 11.3(d). Plaintiff affirmatively pleads that he is bound by these very documents, Compl. ¶¶ 18, 48, and every one of his nine claims arises from his trading in a single Event Contract and the administration of his Kalshi account. Under the FAA, the Court therefore "shall" direct the parties to proceed to arbitration and stay this action. 9 U.S.C. §§ 3, 4.

Should the Court reach the merits, Plaintiff's grievance is, at most, a dispute about the meaning of a contract term that the parties' agreements commit to Kalshi's discretion. Those agreements give Kalshi "sole discretion to interpret a Contract's Terms and Conditions," define the "Rules" to include Kalshi's interpretations and notices, and bar recovery of lost profits and lost trading opportunities. Plaintiff cannot plead around those terms by relabeling the same alleged breach as a tort, a quasi-contract claim, a consumer-protection violation, or a federal statutory claim. Each count fails as a matter of law.

The Court should therefore compel arbitration and stay this action pending arbitration or, in the alternative, dismiss the Complaint in its entirety.

## BACKGROUND

### A. Kalshi Operates a Federally Regulated Exchange for Event Contracts

KalshiEX is a Delaware limited liability company and a designated contract market ("DCM") registered with the Commodity Futures Trading Commission ("CFTC") that operates the exchange on which the event contract at issue was listed and traded. Compl. ¶ 7; Member Agreement §§ I–II.[1] Plaintiff also names Kalshi Inc., Kalshi Klear, Rothera Exchange and

---

[1] The Member Agreement (Sottile Decl. Ex. 1), the KalshiEX Rulebook (the "Rulebook" or "RB") (*Id.* Ex. 2), and the WLEADER Contract Terms (the "Event Contract Terms") (*Id.* Ex. 3) are integral to and

Clearing LLC f/k/a LedgerX LLC, LedgerX LLC, and ten unidentified "Doe" entities (together, the "Conditional Defendants"), each of which is named only "to the extent" it played some unspecified role. Compl. ¶¶ 8–12.

Kalshi lists binary event contracts that trade as "Yes" or "No" positions, each of which settles at $1.00 or $0.00 depending on whether the underlying event occurs. Compl. ¶ 29 n.1; RB at 9, 42. Whether a contract pays out depends on two defined terms: the "Underlying," the "occurrence, or extent of an occurrence" that "determines whether a Contract is in-the-money," and the "Payout Criterion," the outcome that "will cause that Contract to pay a Settlement Value." RB at 10–11.[2]

### B. Plaintiff Agreed to the Member Agreement and Rulebook Before Trading

Plaintiff alleges that, on or around November 6, 2022, he "opened and maintained an account on the Kalshi platform and became bound by the applicable account documents, Rulebook, market terms, and event-contract resolution criteria." Compl. ¶ 18. He further alleges that those documents "constitute binding contractual obligations between Plaintiff and one or more Defendants." *Id.* ¶ 48; *see also id.* ¶ 6 (alleging that Plaintiff is "a Kalshi participant").

No person may open a Kalshi account without first accepting the Member Agreement, which states that "[c]licking 'I accept' to indicate your agreement to be bound by this member agreement . . . . is the legal equivalent of you manually signing this Member Agreement." Member Agreement at 1. The Rulebook likewise provides that no person may "trade any

---

incorporated by reference in the Complaint, which expressly alleges that they "constitute binding contractual obligations." Compl. ¶¶ 18, 21, 23, 35, 48. They are properly considered on this Motion. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir. 1991); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

[2] The Complaint states that positions trade "at a market price between $0.00 and $1.00." Compl. ¶ 29 n.1. In fact, the minimum quote increment for each Contract is $0.01 per contract. Rulebook at 63.

Contracts on the Platform unless such Person has received, read, understood, and accepted the Kalshi Rulebook, Terms of Use, Privacy Policy, and Member Agreement, and has certified having done so." RB R. 5.1.

The Member Agreement expressly incorporates the Rulebook and its arbitration obligation. Members agree that they "will be bound by, and comply with," the Rulebook, and that "[i]n the event of any conflict between this Agreement and the Kalshi Rulebook, the Kalshi Rulebook will govern." Member Agreement § III. Members "acknowledge and agree that [they] have received and read the Kalshi Rulebook." *Id.* § V.C. Members further "acknowledge and agree" that they "will abide by and be subject to the Kalshi Rulebook, as now existing and as hereafter duly amended from time to time, including the obligation to submit to arbitration." *Id.* § V. And the Member Agreement provides: "This Agreement will be governed by the laws of the State of New York. Any dispute between Kalshi and You arising from or in connection with this Agreement will be settled in accordance with the procedures set forth in the Kalshi Rulebook." *Id.* § XVII.

The Rulebook, in turn, mandates arbitration of claims by Members against Kalshi. Rule 11.3(d) provides: "EACH MEMBER OF KALSHI AGREES THAT ANY ACTION IT BRINGS AGAINST A KALSHI PARTY OR AGAINST ANOTHER KALSHI MEMBER WILL BE RESOLVED BY BINDING ARBITRATION, IN ACCORDANCE WITH THE RULES OF THIS CHAPTER AND OTHER RULES OF KALSHI, IF APPLICABLE." RB R. 11.3(d). The "Kalshi Parties" are Kalshi and "its officers, directors, agents, employees, and/or software, hardware, and service providers." RB R. 11.3(a). Rule 11.3(c) further provides that any such action "will be governed by New York law." RB R. 11.3(c).

### C. The Event Contract and Kalshi's February 3, 2025 Guidance

On or around January 4, 2025, Kalshi listed an Event Contract titled "Who will Trump Meet with in 2025," ticker KXWLEADER-25-JT (the "Event Contract"). Compl. ¶ 19. The Event Contract "[r]esolves Yes if the President of the United States meets Justin Trudeau in 2025," and provides that "[a] meeting will be included if the President and Justin Trudeau shake hands or speak to each other directly." *Id.* ¶ 21. The Event Contract terms further reserve that "Kalshi may, at its sole discretion, initiate the Market Outcome Review Process." Event Contract at 1; *see* RB at 42.

Plaintiff began buying "Yes" positions on January 18, 2025. Compl. ¶ 20. On February 3, 2025, President Trump publicly stated that he had spoken with Prime Minister Trudeau, and that same day Kalshi "posted guidance or rule-summary language stating that phone calls would not count toward affirmative resolution of the Event Contract." *Id.* ¶ 23. The Complaint alleges that over the next two days, the "Yes" price fell from approximately $0.88 to approximately $0.13. *Id.* ¶ 88. Plaintiff nonetheless continued buying "Yes" positions through January 1, 2026. *Id.* ¶¶ 20, 24. Although the Complaint refers to "multiple" and "several independently sufficient qualifying events," it identifies only the February 3 telephone call. *Id.* ¶¶ 23, 26.

### D. The Order Cancellation, Resolution, and Withdrawal Allegations

Plaintiff alleges that at approximately 2:00 a.m. ET on December 28, 2025, his resting orders were canceled and that he restored them "several hours later," allegedly losing priority on approximately 20,000 contracts. Compl. ¶ 25. He does not allege that he invoked the Rulebook's procedure for review of an allegedly erroneous cancellation. *See* RB at 36 (R. 5.10(c)). On December 29, 2025, three days before expiration, Plaintiff sent Kalshi a letter asserting that the Event Contract "required an affirmative resolution." Compl. ¶ 26.

Plaintiff alleges that on or about January 1, 2026, Kalshi changed the Event Contract's displayed expiration time from 10:00 a.m. ET to 12:00 a.m. ET and resolved the contract "No." *Id.* ¶¶ 28, 30, 33–34. He claims his 1,173,968 "Yes" positions should have paid $1,173,968. *Id.* ¶ 29. He further claims that, had trading remained open until 10:00 a.m., he would have spent his remaining $24,293.10 to buy up to 2,429,310 more contracts at $0.01 each, and he seeks approximately $2,405,016.90 for those never-purchased contracts. *Id.* ¶¶ 36–38. The Complaint pleads no facts showing that any counterparty would have sold him those contracts.

Finally, Plaintiff alleges that when he attempted to withdraw his $24,293.10 cash balance on or about January 1, 2026, he "received an error," and that the funds remain "within his Kalshi account." *Id.* ¶¶ 39, 41–42. Plaintiff himself told Kalshi that the restriction "appeared to be individualized." *Id.* ¶ 41. There is no restriction on Plaintiff's account; his withdrawal attempt failed because no bank account is linked to it. Declaration of Justin Joseph D'Elia ("D'Elia Decl."), Ex. 1.

**E. The Complaint**

Plaintiff filed this action on August 31, 2026, asserting nine causes of action against all Defendants collectively: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory judgment; (4) conversion; (5) money had and received/unjust enrichment, pleaded in the alternative; (6) violation of Section 25 of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 25; (7) negligent misrepresentation; (8) fraud and fraudulent concealment; and (9) violation of New York General Business Law ("GBL") § 349. Compl. ¶¶ 47–100. Every count arises from Kalshi's administration of a single Event Contract and Plaintiff's account, both governed by agreements Plaintiff concedes are binding. *Id.* ¶ 48.

### F. Plaintiff Refuses Kalshi's Request to Arbitrate

Before responding to the Complaint, Kalshi's counsel sought Plaintiff's agreement to arbitrate. On September 18, 2026, in requesting an extension of the Kalshi Defendants' time to respond to the Complaint, Kalshi's counsel asked whether Plaintiff "would like to discuss the parties jointly moving this matter to an appropriate arbitration forum of [Plaintiff's] choosing[.]" D'Elia Decl. Ex. 1. Plaintiff has instead continued to prosecute this action.

## ARGUMENT

## I. PLAINTIFF MUST BE COMPELLED TO ARBITRATE HIS CLAIMS AND THIS ACTION SHOULD BE STAYED

The FAA makes a written arbitration provision in "a contract evidencing a transaction involving commerce . . . valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[U]pon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." *Id.* § 4. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983), and courts "must rigorously enforce arbitration agreements according to their terms," *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (citation omitted); *see AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).[3]

The FAA governs because the Member Agreement governs Plaintiff's interstate trading on a federally regulated exchange. Compl. ¶¶ 6–7, 16–18; *see Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–77 (1995). In deciding a motion to compel, the Court considers

---

[3] New York law is in accord, reflecting "a long and strong public policy favoring arbitration." *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 49 (1997); *see* CPLR 7501.

whether the parties agreed to arbitrate and whether the dispute falls within the scope of that agreement. *Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 408–09 (S.D.N.Y. 2016).

**A. <u>Plaintiff Agreed to Arbitrate His Claims Against Kalshi</u>**

"The party moving to compel arbitration must make a prima facie initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement in issue." *Begonja*, 159 F. Supp. 3d at 409 (internal quotation marks omitted). Whether the parties agreed to arbitrate is governed by state contract law. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). A user who affirmatively assents to online terms as a condition of creating an account is bound by them. *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74–76 (2d Cir. 2017); *Flores v. Chime Fin., Inc.*, No. 21-cv-4735, 2022 WL 873252, at *3 (S.D.N.Y. Mar. 23, 2022) (plaintiff agreed to arbitration provision because she could not have created an account without affirmatively agreeing to the terms); *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 832 (S.D.N.Y. 2020).

There is no genuine dispute that an agreement to arbitrate exists. Plaintiff affirmatively pleads that he "became bound by the applicable account documents, Rulebook, market terms, and event-contract resolution criteria," and his contract, implied-covenant, and CEA claims depend on those very agreements. Compl. ¶¶ 18, 48–51, 53–55, 70–71. He could not have opened his account or traded without clicking through the Member Agreement and certifying acceptance of the Rulebook, Member Agreement at 2, § I; RB R. 5.1, and in doing so he accepted "the obligation to submit to arbitration," Member Agreement § V. Plaintiff cannot invoke these agreements as the basis for his claims while disclaiming the arbitration obligation they contain.

### B. <u>Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement</u>

Courts in this Circuit "construe arbitration clauses as broadly as possible." *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995). "[T]he existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that [it] covers the asserted dispute." *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71, 74 (2d Cir. 1997) (internal quotation marks omitted). In applying that presumption, courts look to the factual allegations underlying the claims, not the legal labels attached to them. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987).

The agreements here could hardly be broader. Rule 11.3(d) reaches "any action" a Member "brings against a Kalshi Party," without limitation. RB R. 11.3(d). The Member Agreement likewise covers "[a]ny dispute between Kalshi and You arising from or in connection with this Agreement." Member Agreement § XVII. Every claim in the Complaint arises from Plaintiff's trading on the exchange and the administration of his account: Kalshi's resolution of the Event Contract, the timing of its expiration, the cancellation of Plaintiff's resting orders, and Plaintiff's withdrawal of funds. Compl. ¶¶ 50, 55, 57, 60, 64, 71, 75, 82, 96. Indeed, the Event Contract is itself a "Kalshi Contract," and Plaintiff's dispute over its resolution is a quintessential "Claim" under Chapter 10. RB R. 10.1(e). Plaintiff's tort, quasi-contract, consumer-protection, and statutory theories rest on the same facts as his contract claim and are equally subject to arbitration.

Nor can Plaintiff avoid arbitration by pointing to Rule 10.1(a), which provides that "[i]f so elected by a Member, any Claim by the Member against a Member . . . shall be settled by arbitration." RB R. 10.1(a). That provision addresses claims between Members. Claims against Kalshi are governed by Rule 11.3(d), which contains no election and provides that any such

action "will be resolved by binding arbitration." RB R. 11.3(d). The Member Agreement confirms that arbitration is an "obligation," Member Agreement § V, and the Rulebook prohibits a Member from commencing "a suit in any court prior to arbitrating a case that is required to be arbitrated," RB R. 10.4(a). And any doubt would be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25.

### C. <u>The Court Should Compel Arbitration and Stay This Action</u>

Because Plaintiff agreed to arbitrate and every claim is within the scope of that agreement, the Court "shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). The Court should compel Plaintiff to arbitrate all of his claims in accordance with the Member Agreement and Chapters 10 and 11 of the Rulebook, and stay this action pending arbitration.

## II. <u>IN THE ALTERNATIVE, THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AND MUST BE DISMISSED</u>

Should the Court decline to compel arbitration, the Complaint should be dismissed in its entirety.

### A. <u>The Breach of Contract Claim Must Be Dismissed</u>

To state a breach of contract claim under New York law, a plaintiff must allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages, and must identify the specific contractual provisions allegedly breached. *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011). Count One fails for three reasons: Plaintiff identifies no provision that Kalshi breached, the conduct he challenges is expressly authorized by the agreements he invokes, and the damages he seeks are contractually barred.

1. Plaintiff Identifies No Contractual Provision That Kalshi Breached

Count One alleges in a single sentence that Defendants breached by "failing to resolve and honor the Event Contract according to its published terms," by "preemptively resetting the Event Contract's expiration time," and by "restricting Plaintiff's access to liquid account funds without a lawful or contractual basis." Compl. ¶ 50. Plaintiff does not, however, identify any provision of the Member Agreement, the Rulebook, or the Event Contract terms that this conduct violated. He refers generically to "[t]he account documents, Rulebook, market terms, and Event Contract resolution criteria," *id.* ¶ 48, and repeatedly faults Kalshi for not "identify[ing]" Rulebook authority for its actions, *id.* ¶¶ 25, 35, 44. That reverses the pleading burden. It is in fact the plaintiff who must plead the provision breached, not the defendant who must plead its authority.

2. Kalshi's Resolution of the Event Contract Was an Exercise of Its Express Contractual Discretion

Plaintiff's central theory is that the February 3, 2025 telephone call between President Trump and Prime Minister Trudeau satisfied the Payout Criterion. Compl. ¶¶ 22–23. But the agreements Plaintiff invokes vest that interpretive judgment in Kalshi. The Rulebook provides that "Kalshi has sole discretion to interpret a Contract's Terms and Conditions" while a contract remains open, RB at 42; defines the "Rules" to include Kalshi's "interpretations" and "notices," RB at 10; and requires Members to monitor those notices for changes affecting their rights, RB at 27. The Event Contract terms likewise reserve to Kalshi, "at its sole discretion," the right to initiate the Market Outcome Review Process. Event Contract at 1. And the Rulebook vests the determination of Market Outcomes in Kalshi's processes and makes the Outcome Review Committee's determinations "final." RB R. 7.1(a)–(c).

Kalshi exercised exactly that discretion. Plaintiff concedes that Kalshi did not amend the Event Contract, but instead "posted guidance" stating that phone calls would not count, Compl. ¶ 23, which is an "interpretation" and "notice" that the Rulebook makes part of the governing Rules. RB at 10. Kalshi then proceeded with the Event Contract consistent with that publicly announced interpretation. Compl. ¶¶ 23, 30.

Plaintiff's preferred reading, that a telephone call is a "meeting," cannot override a contractual allocation of interpretive authority to which he expressly agreed. Nor does Plaintiff's reference to unidentified "multiple qualifying events" help him. Compl. ¶¶ 23, 26. The Complaint does not allege the date, place, or circumstances of any in-person meeting, handshake, or other qualifying interaction between the two leaders in 2025, and unidentified events cannot support a plausible claim that the Payout Criterion was satisfied. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

3. <u>The Order Cancellation, Expiration, and Withdrawal Allegations Do Not State a Breach</u>

Plaintiff's remaining theories fare no better. The Rulebook contemplates that resting orders may be "cancelled by Kalshi or its Derivatives Clearing Organization partner . . . in accordance with these Rules," RB R. 5.3(c), and provides a review procedure Plaintiff does not allege he invoked, RB at 36 (R. 5.10(c)). He restored his orders "several hours later." Compl. ¶ 25.

As to the expiration time, Plaintiff does not allege that any position or open order went unsettled; his own orders continued executing after midnight. Compl. ¶¶ 28, 33–34. The only harm alleged is the lost opportunity to buy additional contracts, which is not recoverable.

Regarding Plaintiff's withdrawal allegations, the Rulebook expressly authorizes Kalshi to suspend or deny withdrawal processing and to place an account on hold in its discretion in

specified circumstances. RB R. 5.2(g), 6.4(a). Plaintiff alleges only that he "received an error" when attempting a withdrawal, Compl. ¶ 41, which does not plausibly allege a breach of any of these provisions.

4. The Damages Plaintiff Seeks Are Barred by the Parties' Agreements

Even if Count One otherwise survived, Plaintiff's claimed damages are largely barred by the parties' agreements. Plaintiff agreed that Kalshi shall not "be liable . . . for . . . any consequential loss, loss of profit, or loss of trading opportunity, as a result of any actual or proposed transactions or as a direct or indirect result of any services provided by Kalshi Parties . . . ." RB at 57 (R. 11.3(a)). Under New York law, such limitations "represent[] the parties' Agreement on the allocation of the risk of economic loss" and "courts should honor" them. *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.*, 84 N.Y.2d 430, 436 (1994). And New York's narrow public-policy exception for gross negligence or willful misconduct does not extend to clauses that limit the types of recoverable damages rather than exculpate a party entirely. *In re Part 60 Put-Back Litig.*, 36 N.Y.3d 342, 353 (2020).

Plaintiff's approximately $2,405,016.90 claim for contracts he never purchased, Compl. ¶¶ 36–38, and his claim for lost priority on approximately 20,000 contracts, *id.* ¶ 25, are quintessential claims for "loss of anticipated profits" and "loss of opportunity," and are wholly speculative, as the Complaint pleads no facts showing any counterparty would have sold him those contracts.

**B. The Implied Covenant Claim (Count Two) Must Be Dismissed as Duplicative**

New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002). Count Two alleges that Defendants breached the implied covenant by "resolving the Event

Contract contrary to its published terms," relying on the February 3 guidance, and "using account restrictions as leverage." Compl. ¶ 55. That is the same conduct, causing the same damages, as Count One. *Compare id.* ¶¶ 50–51, *with id.* ¶¶ 55–56.

Count Two fails for a second reason. The implied covenant can impose only obligations consistent with the parties' express agreement and cannot be used to create new duties that contradict it. *See Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389–90 (1995); *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013). Plaintiff seeks to use the covenant to override the express grants of discretion that the Rulebook confers on Kalshi to interpret contract terms, determine Market Outcomes, cancel orders, and administer withdrawals. RB at 10, 42; RB R. 5.2(g), 5.3(c), 6.4(a), 7.1. The covenant cannot be used to rewrite those express terms. Count Two should be dismissed.

### C. <u>The Declaratory Judgment Claim (Count Three) Must Be Dismissed</u>

Count Three seeks a declaration that Defendants "lack a lawful or contractual basis to prevent Plaintiff from withdrawing liquid funds available in his account." Compl. ¶ 57. A declaratory judgment claim that seeks resolution of legal issues that will necessarily be resolved by a co-pending breach of contract claim serves no useful purpose and is properly dismissed. *See Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 480 (S.D.N.Y. 2006). Count One already alleges that Defendants breached by "restricting Plaintiff's access to liquid account funds without a lawful or contractual basis." Compl. ¶ 50. The requested declaration would add nothing.

### D. <u>The Conversion Claim (Count Four) Must Be Dismissed</u>

Conversion requires "(1) plaintiff's possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." *Colavito v. N.Y. Organ Donor Network, Inc.*, 8 N.Y.3d 43, 50 (2006) (internal citations

omitted). A claim for conversion of money lies only where the plaintiff had ownership, possession, or control of the funds before the alleged conversion. *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 204 (2d Cir. 2013). Count Four fails both elements and is duplicative of Count One.

1. <u>Plaintiff Alleges No Possessory Interest In, or Dominion Over, Specific Funds</u>

To establish a right of possession, a plaintiff "must show legal ownership or an immediate superior right of possession to a specific identifiable thing." *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 660 (S.D.N.Y. 2011). A mere contractual right to payment does not suffice. *Komlossy v. Faruqi & Faruqi, LLP*, No. 15-civ-9316 (KPF), 2017 WL 722033, at *9–10 (S.D.N.Y. Feb. 23, 2017), *aff'd*, 714 Fed. App'x 11 (2d Cir. 2017). Plaintiff asserts an "immediate possessory right to his liquid cash balance held in or through his Kalshi account," Compl. ¶ 59, but alleges no facts supporting that conclusion. To the contrary, he alleges that his funds are held in an account governed by "the applicable account documents, Rulebook, market terms, and event-contract resolution criteria." *Id.* ¶ 18. His right to withdraw is therefore contractual, not possessory.

Nor does Plaintiff allege dominion. He does not allege that Defendants altered his balance, spent the funds, or diverted them to their own use. To the contrary, he alleges that the $24,293.10 "remains frozen within his Kalshi account." Compl. ¶¶ 42, 60; *cf. Mfrs. Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 125 (1st Dep't 1990).

2. <u>The Conversion Claim Merely Seeks to Enforce a Contractual Obligation</u>

No tort action lies "where plaintiff is essentially seeking enforcement of the bargain." *In re Chateaugay Corp.*, 10 F.3d 944, 958 (2d Cir. 1993) (quoting *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 552 (1992)). "For a claim of conversion to survive a motion to dismiss, it is not

enough merely to incorporate the factual allegations relating to breach of contract." *Frontline Processing Corp. v. Merrick Bank Corp.*, No. 13-civ-3956, 2014 WL 837050, at *6 (S.D.N.Y. Mar. 3, 2014); *see Advanced Oxygen Therapy Inc. v. Orthoserve Inc.*, 572 F. Supp. 3d 26, 38 (S.D.N.Y. 2021); *Birner v. Kensington Vanguard Holdings, LLC*, No. 24-CV-2743-LTS-JW, 2025 WL 963311, at *6–8 (S.D.N.Y. Mar. 31, 2025). Count One alleges that Defendants breached by "restricting Plaintiff's access to liquid account funds without a lawful or contractual basis." Compl. ¶ 50. Count Four alleges the same conduct and seeks the same "loss of use of funds, interest, and consequential" damages. *Compare id.* ¶¶ 60, 62, *with id.* ¶ 51. It should be dismissed as duplicative.

### E. <u>The Unjust Enrichment and Money Had and Received Claim (Count Five) Must Be Dismissed</u>

#### 1. <u>The Contracts Governing This Dispute Preclude Quasi-Contract Recovery</u>

"The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987); *see Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs., Inc.*, 183 F.4th 78, 99–100 (2d Cir. 2026). "[U]njust enrichment is not a catchall cause of action to be used when others fail," and it is unavailable "where it simply duplicates, or replaces, a conventional contract or tort claim." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012).

Here, the pleadings establish that valid contracts govern. Plaintiff alleges that he "became bound by the applicable account documents, Rulebook, market terms, and event-contract resolution criteria," Compl. ¶ 18, and that those documents "constitute binding contractual obligations," *id.* ¶ 48. Nowhere does he allege that those agreements are invalid, unenforceable, or ambiguous in scope. Further, his claim based on unjust enrichment seeks the

same recovery, money, as his breach of contract claim: "liquid account cash and unpaid contract proceeds." *Id.* ¶ 64; *compare id.* ¶¶ 50–51. Where an enforceable contract governs, a plaintiff "could not also recover damages in unjust enrichment or money had and received." *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 201–02 (2d Cir. 2023); *see also Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (2005).

Plaintiff's attempt to plead Count Five "in the alternative," Compl. ¶ 66, does not save it. Unlike in *Northwell Health*, 183 F.4th at 100–01, Kalshi does not dispute that the Member Agreement and Rulebook govern; Plaintiff affirmatively pleads it, and he alleges no conduct by any Conditional Defendant giving rise to a quasi-contractual obligation.

2. Plaintiff Fails to Allege That Any Defendant Was Enriched at His Expense

Count Five independently fails because Plaintiff does not allege that a defendant "was enriched . . . at plaintiff's expense," *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), through a "specific and direct benefit," *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). His cash remains in his own account, Compl. ¶¶ 42–43, and the Complaint describes Kalshi as a "neutral exchange," *id.* ¶ 23, pleading no facts suggesting that Kalshi, rather than the "No" counterparties, benefited from the resolution.

**F. The Commodity Exchange Act Claim (Count Six) Fails As A Matter of Law**

Section 25(b) of the CEA, 7 U.S.C. § 25(b), creates a narrow, exclusive private right of action against a "registered entity" that fails to enforce, or in enforcing violates, a required rule, and requires proof that the entity "acted in bad faith" causing the plaintiff's "actual losses." *Id.* § 25(b)(1), (4), (5); *see Brawer v. Options Clearing Corp.*, 807 F.2d 297, 302–03 (2d Cir. 1986). Count Six fails at every step.

1. Count Six Must Be Dismissed as to Every Defendant Not Alleged to Be a Registered Entity

Section 25(b) reaches only "registered entit[ies]." 7 U.S.C. § 25(b)(1). The Complaint alleges only that "one or more Defendants are registered entities," Compl. ¶ 68, which is impermissible group pleading, *Atuahene v. City of Hartford*, 10 Fed. App'x 33, 34 (2d Cir. 2001). KalshiEX is the only Defendant alleged to be a registered entity. Compl. ¶¶ 7–11. Count Six should be dismissed as to all other Defendants.

2. The Complaint Does Not Plausibly Allege Bad Faith

Bad faith is the essential element of a Section 25(b) claim. "Bad faith requires wrongful knowledge, and failure to act on that knowledge with a motive ascribable to malfeasance." *W. Cap. Design, LLC v. N.Y. Mercantile Exch.*, 180 F. Supp. 2d 438, 441 (S.D.N.Y. 2001), *aff'd*, 25 Fed. App'x 63 (2d Cir. 2002). Liability may be imposed only where "self-interest or other ulterior motive unrelated to proper regulatory concerns" constitutes "the sole or dominant reason for the exchange action." *Minpeco, S.A. v. Hunt*, 693 F. Supp. 58, 62 (S.D.N.Y. 1988) (quoting *Sam Wong & Son, Inc. v. N.Y. Mercantile Exch.*, 735 F.2d 653, 677 (2d Cir. 1984)). Under Rule 8, the facts supporting that motive must make it plausible, not merely conceivable. *Iqbal*, 556 U.S. at 678–79; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The Complaint offers nothing but labels, appending "bad faith" to a list of conduct Plaintiff disagrees with. Compl. ¶ 71; *see Twombly*, 550 U.S. at 555. It alleges no motive: no allegation that KalshiEX profited from a "No" resolution, held a position, or favored any counterparty; to the contrary, it calls Kalshi a "neutral exchange." Compl. ¶ 23.

***Resolution of the Event Contract.*** An exchange that publicly announces its interpretation of a contract term eleven months before expiration, Compl. ¶¶ 23, 88, and then resolves the contract consistently with it, is the antithesis of an exchange acting with a hidden

motive. The Complaint identifies no qualifying event other than the February 3 call. *Id.* ¶¶ 23, 26. An interpretive disagreement about whether a phone call is a "meeting" is, at most, a contract dispute. *See Brawer*, 807 F.2d at 302–03.

***Expiration timing and order cancellation.*** A ten-hour discrepancy in a "displayed expiration time," Compl. ¶¶ 28, 33, and a single overnight order cancellation that Plaintiff reversed "several hours later" and that preceded his demand letter, *id.* ¶¶ 25–26; RB R. 5.3(c), suggest no motive to harm Plaintiff, and the Complaint pleads none.

***Withdrawal restriction.*** Plaintiff's only motive allegation, made "[u]pon information and belief," is that the withdrawal restriction was imposed "because Plaintiff disputed" the resolution. Compl. ¶ 45. But the Rulebook permits Kalshi, in its discretion, to suspend withdrawals that could "cause a potential risk of harm" and to place accounts on hold. RB R. 5.2(g), 6.4(a). Further, there are no longer any restrictions on Plaintiff's account. D'Elia Decl. Ex. 1.

3. <u>The Complaint Does Not Identify Any Rule KalshiEX Failed to Enforce or Any CEA Provision It Violated</u>

A Section 25(b)(1) claim must be tethered to a specific rule the registered entity was required to enforce, or a specific CEA provision or CFTC regulation it violated. 7 U.S.C. § 25(b)(1). Count Six cites none, referring only generically to rules "governing contract modification, expiration and resolution, order handling, withdrawal access," and the like. Compl. ¶ 70. Instead, Plaintiff faults KalshiEX for the *absence* of Rulebook authority, *id.* ¶¶ 25, 35, 71, which states no Section 25(b) claim, particularly where the Rulebook expressly authorizes the challenged conduct. RB R. 5.2(g), 5.3(c), 6.4(a), 7.1.

#### 4. Plaintiff Cannot Recover Lost-Opportunity Damages Under Section 25(b)

Section 25(b) limits recovery to "actual losses." 7 U.S.C. § 25(b)(1), (4); *see Harry v. Total Gas & Power N. Am., Inc.*, 889 F.3d 104, 112 (2d Cir. 2018). Plaintiff's roughly $2.4 million claim for contracts he would have bought had trading stayed open, Compl. ¶¶ 36–38, and his claim for 20,000 cancelled orders, *id.* ¶ 25, seek speculative profits from transactions that never occurred. *See Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 261–62 (2d Cir. 2006); *Kumaran v. Nat'l Futures Ass'n*, No. 20-cv-3668-GHW, 2022 WL 1805936, at *3 (S.D.N.Y. June 2, 2022). At a minimum, Count Six should be dismissed to the extent it seeks these damages.

### G. The Negligent Misrepresentation and Fraud Claims (Counts Seven and Eight) Must Be Dismissed

Counts Seven and Eight rest on a single alleged "representation": that the Event Contract "would be resolved according to the published contract language and objective resolution criteria." Compl. ¶¶ 75, 82. That is a restatement of the contractual promise Plaintiff alleges Kalshi breached. *Id.* ¶ 50. Both claims fail.

#### 1. Both Claims Impermissibly Duplicate the Breach of Contract Claim

Under New York law, "a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." *Clark-Fitzpatrick*, 70 N.Y.2d at 389. To maintain a fraud claim alongside a contract claim, a plaintiff must "(i) demonstrate a legal duty separate from the duty to perform under the contract," (ii) point to "a fraudulent misrepresentation collateral or extraneous to the contract, or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996) (internal citations omitted). Plaintiff satisfies none of these requirements.

The alleged misrepresentation, that the Event Contract would be resolved according to its published terms, is the contract itself. Compl. ¶¶ 82–83 (quoting the Payout Criterion). The alleged duty to "provide accurate and non-misleading information concerning the terms and resolution of the subject contract," *id.* ¶ 77, is simply the duty to perform. And the damages sought, "the value of the contract payout that Defendants refused to honor" and "loss of use of funds," *id.* ¶¶ 80, 93, are identical to the contract damages sought in Count One, *id.* ¶ 51. A promise to perform a contract, followed by an alleged failure to perform, is a breach, not a fraud. Counts Seven and Eight should be dismissed as duplicative.

2. Plaintiff Fails to Allege a Special Relationship Supporting Negligent Misrepresentation

Negligent misrepresentation requires "a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011). Kalshi's knowledge of its own contract terms, Compl. ¶¶ 76–77, is true of every party to a standard-form contract and does not transform an arm's-length trading relationship into a special one, particularly where Plaintiff agreed he is responsible for reading, understanding, and accepting the terms of an Event Contract prior to trading. *See* RB at 63.

3. The Fraud Claim Does Not Satisfy Rule 9(b) and Is Contradicted by the Complaint Itself

To state a claim for fraud, a plaintiff must allege "a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). Under Rule 9(b), the plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent," and must plead facts giving rise to a strong

inference of fraudulent intent. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006). Where multiple defendants are sued, the complaint must inform each defendant of the nature of its alleged participation in the fraud. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Count Eight fails each requirement.

*First*, Count Eight attributes every statement to "Defendants" collectively, Compl. ¶¶ 82–90, without identifying which Defendant made any statement or what role each played. *Mills*, 12 F.3d at 1175.

*Second*, Plaintiff pleads no facts showing that the published terms were false when made, offering only three alternative states of mind "[u]pon information and belief." Compl.. ¶ 87. That is speculation, not particularity.

*Third*, the Complaint defeats any inference of concealment or justifiable reliance: Kalshi publicly posted its interpretation on February 3, 2025, eleven months before expiration, Compl. ¶¶ 23, 88, and Plaintiff made the overwhelming majority of his purchases afterward, *id.* ¶ 20. He alleges no relationship giving rise to a duty to disclose and cannot claim he "would not have purchased" had he known Kalshi's position, *id.* ¶ 92, when he kept buying after learning it.

*Fourth*, Plaintiff's scienter allegation, that the guidance issued the same day as the call and moved the price, *id.* ¶ 88, shows prompt public disclosure, the opposite of fraudulent intent. Count Eight, and the accompanying punitive damages demand, should be dismissed.

### H. <u>The General Business Law Section 349 Claim (Count Nine) Fails as a Matter of Law</u>

#### 1. <u>Plaintiff's Claim Under New York's General Business Law Is Preempted</u>

"Congress has the power to preempt state law." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Thus, "state laws that interfere with, or are contrary to the laws of congress" are preempted and "invalid." *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604

(1991) (internal quotation omitted). Preemption may be express or implied, and implied preemption takes two forms: field preemption, where Congress has evinced an intent to occupy an entire regulatory field, and conflict preemption, where "state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) (internal quotation omitted). GBL § 349 is subject to these principles like any other state law. Count Nine is preempted under each of them.

*First*, the CEA vests the CFTC with "exclusive jurisdiction . . . with respect to . . . transactions involving swaps . . . traded or executed on a contract market designated pursuant to section 7 of this title." 7 U.S.C. § 2(a)(1)(A). The savings clause that follows preserves the jurisdiction of state authorities only "[e]xcept as hereinabove provided," *id.*, and Section 16(e) confirms that the CEA leaves state law untouched only as to transactions "not conducted on or subject to the rules of" a DCM, 7 U.S.C. § 16(e)(1)(B). Congress thus drew a line between on-exchange transactions, which are reserved to the CFTC, and off-exchange transactions, which remain subject to state law. *See Mississippi v. Louisiana*, 506 U.S. 73, 77–78 (1992) (a grant of "exclusive" jurisdiction to one body "necessarily denies jurisdiction" to others). The Second Circuit has long recognized that the 1974 amendments brought the regulation of exchange trading under "the aegis of" the CFTC and that "the CEA preempts the application of state law" to that trading. *Leist v. Simplot*, 638 F.2d 283, 314, 322 (2d Cir. 1980), *aff'd sub nom. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353 (1982).

Here, Plaintiff alleges that KalshiEX is a CFTC-registered DCM, that the Event Contract was "listed and traded" on its exchange, and that he "engaged in transactions on or subject to the

rules of one or more registered entities." Compl. ¶¶ 7, 69. Count Nine seeks to impose New York consumer-protection liability on exactly those transactions.

*Second*, Plaintiff's GBL claim is field preempted. In 1974, Congress deleted the provision preserving state law "to assure that Federal preemption is complete," 120 Cong. Rec. S30464 (1974) (statement of Sen. Curtis), and courts hold state-law claims preempted where they would "directly affect trading on or the operation of a futures market." *Am. Agric. Movement, Inc. v. Bd. of Trade*, 977 F.2d 1147, 1156–57 (7th Cir. 1992). Courts have applied that principle to Kalshi's exchange specifically. *KalshiEX LLC v. Flaherty*, 172 F.4th 220, 229 (3d Cir. 2026). Count Nine falls squarely within that field. Plaintiff challenges KalshiEX's listing, interpretation, and resolution of the Event Contract and its administration of trading, Compl. ¶¶ 95–99, core DCM functions regulated by the CEA and CFTC Core Principles, 7 U.S.C. § 7(d); 17 C.F.R. pt. 38.

*Third*, Count Nine is conflict preempted. Congress chose a limited remedy for traders who claim an exchange mishandled its rules: Section 25(b), which requires bad faith and limits recovery to actual losses. 7 U.S.C. § 25(b)(1), (4). Count Nine attacks the same conduct as Count Six, *compare* Compl. ¶ 71, *with id.* ¶¶ 96–97, but would substitute a "reasonable consumer" standard and treble damages, *id.* ¶ 100, upsetting "the careful balance struck by Congress," *Arizona v. United States*, 567 U.S. 387, 406 (2012), and the uniformity a national exchange requires, *Am. Agric. Movement*, 977 F.2d at 1156.

*Fourth*, New York law itself reaches the same result. GBL § 349 provides that "it shall be a complete defense that the act or practice is . . . subject to and complies with the rules and regulations of, and the statutes administered by, . . . any official department, division, commission or agency of the United States." N.Y. Gen. Bus. Law § 349(d). KalshiEX is a

CFTC-designated contract market, Compl. ¶ 7, and the listing, interpretation, and resolution of an event contract on that market, is subject to the CEA and the CFTC's regulations. Count Nine is therefore barred by the statute's own terms.

2. Plaintiff's General Business Law Section 349 Claim Also Fails Substantively

To state a claim under Section 349, a plaintiff must allege that (1) the defendant engaged in consumer-oriented conduct; (2) the conduct was materially misleading; and (3) the plaintiff suffered injury as a result. *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012); *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25–26 (1995). The deceptive transaction must also have occurred in New York. *Goshen v. Mut. Life Ins. Co.*, 98 N.Y.2d 314, 324–25 (2002). Count Nine fails each requirement.

3. Plaintiff, an Illinois Resident, Does Not Allege a Deceptive Transaction in New York

Section 349 applies only to deception practiced "in this state." N.Y. Gen. Bus. Law § 349(a). "[T]he transaction in which the consumer is deceived must occur in New York[;]" it is not enough that a defendant is headquartered in, or devised its scheme in, New York. *Goshen*, 98 N.Y.2d at 324–26. Plaintiff alleges that he is "a citizen and resident of Illinois." Compl. ¶ 6. He does not allege that he viewed the Event Contract terms, placed any order, or suffered any injury in New York. His jurisdiction and venue allegations assert only that the platform is "headquartered, operated, or substantially administered in New York" and that conduct was "directed from this District." *Id.* ¶¶ 16–17. Under *Goshen*, that is insufficient as a matter of law, and Plaintiff's claim should be dismissed on this ground alone.

4. The Claim Arises from a Private Contract Dispute, Not Consumer-Oriented Conduct

Section 349 does not reach "[p]rivate contract disputes, unique to the parties." *Oswego*, 85 N.Y.2d at 25. Count Nine is a repackaged version of Plaintiff's contract claim: he alleges that Defendants "represented that the Event Contract would be resolved according to the published terms" and then "failed to honor the contract." Compl. ¶ 96; *compare id.* ¶ 50. The publication of standardized contract terms is not itself deceptive; every form contract is "standardized" and "public-facing." *See id.* ¶¶ 95, 98. What Plaintiff actually challenges is Kalshi's interpretation and application of those terms to a single market, the cancellation of his resting orders, and the handling of his own account, matters specific to his positions and his dispute.

5. The Complaint Does Not Plead a Materially Misleading Act or Omission

Conduct is "materially misleading" under Section 349 only if it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26. Count Nine identifies two purported deceptions, and both fail on the face of the Complaint.

*First*, Plaintiff alleges that Defendants represented the Event Contract would be resolved according to its terms and then did not. Compl. ¶ 96. A promise to perform followed by alleged non-performance is a breach, not a deceptive act, and a reasonable member, bound by a Rulebook giving Kalshi "sole discretion" to interpret contract terms and making outcome determinations "final," could not believe resolution was purely mechanical. RB at 42; RB R. 7.1(a)-(c); Member Agreement §§ III, V.

*Second*, Plaintiff alleges that members "were not informed, before or during trading," that Defendants would apply a criterion excluding phone calls. Compl. ¶ 97. But the Complaint itself pleads that Kalshi publicly "posted guidance or rule-summary language stating that phone calls would not count" on February 3, 2025, eleven months before expiration, and that the market

immediately reacted to that disclosure. *Id.* ¶¶ 23, 88. The Court need not accept a conclusory allegation contradicted by the Complaint's own factual allegations. *See Iqbal*, 556 U.S. at 678–79.

6. Plaintiff Fails to Plead a Cognizable Injury Caused by Any Deception

A Section 349 plaintiff must plead actual injury caused by the deceptive act, and the deception cannot itself be the injury. *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 56 (1999). Plaintiff's claimed injuries, Compl. ¶ 99, are either contract damages or the deception-as-injury theory *Small* rejected. And he could not have been injured by the alleged concealment of Kalshi's interpretation because he kept buying in volume after it was published. *Id.* ¶¶ 20, 23, 37.

7. Alternatively, Count Nine Is Limited by Plaintiff's Contractual Undertakings

Even if Count Nine survived, the Member Agreement's limitation on lost-profit and lost-opportunity damages applies. RB at 57 (R. 11.3(a)). For the reasons set out in Section II.A.4, those damages should be dismissed under Count Nine as well.

**CONCLUSION**

For the foregoing reasons, the Kalshi Defendants respectfully request that the Court grant their Motion and compel Plaintiff to arbitrate his claims and stay this action pending arbitration or, in the alternative, dismiss the Complaint in its entirety with prejudice.

[*Signatures on next page*]

Dated: October 29, 2026
New York, New York

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Justin J. D'Elia*
Justin J. D'Elia
Y. Katie Wang
Jillian Dreusike
335 Madison Ave.
New York, NY 10017
Telephone: (212) 692-1000
Facsimile: (212) 692-1020
Email: jjdelia@duanemorris.com
Email: kwang@duanemorris.com
Email: jdreusike@duanemorris.com

- and -

Michael S. Zullo (*pro hac forthcoming*)
30 South 17th St.
Philadelphia, PA 19103
Telephone: (215) 979-1000
Facsimile: (215) 979-1020
Email: mszullo@duanemorris.com

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum of law complies with the applicable 8,750-word limit. According to the word-count function of Microsoft Word, the memorandum contains 8,322 words, including headings, footnotes, and endnotes, and excluding the caption, any index, table of contents, table of authorities, signature blocks, and required certificates.

Dated: October 29, 2026
New York, New York

*/s/ Justin J. D'Elia*
Justin J. D'Elia
Duane Morris LLP
*Attorneys for Defendants*